**ENVIRONMENTAL PROTECTION INFORMATION CENTER, a California nonprofit corporation, Plaintiff–Appellant,**

v.

**UNITED STATES FOREST SERVICE, Defendant–Appellee.**

No. 05–17093.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2006.

Filed May 9, 2007.

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

Marianne G. Dugan, Eugene, OR, for Plaintiff–Appellant.

Allen M. Brabendere, Esq., DOJ—U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, Ernest Robert Wright, Esq., US-

SAC—Office of the U.S. Attorney, Sacramento, CA, for Defendant–Appellee.

Before: T.G. NELSON, GOULD, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Environmental Protection Information Center ("EPIC") appeals the district court's order granting summary judgment to United States Forest Service ("USFS") and denying EPIC's motion for summary judgment in EPIC's action seeking to enjoin a forest-thinning project ("the project") in the Shasta–Trinity National Forest in California. 28 U.S.C. § 1291 gives us jurisdiction. We review the district court's grant of summary judgment de novo, and, under the Administrative Procedure Act, we may set aside the agency's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). *Native Ecosystems Council v. USFS,* 428 F.3d 1233, 1238 (9th Cir.2005).

## I

EPIC first argues that USFS's environmental assessment ("EA") violated the National Environmental Policy Act ("NEPA") because it failed to analyze a reasonable range of alternatives to the forest-thinning project. NEPA mandates that federal agencies "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42

U.S.C. § 4332(2)(E). We have held that NEPA requires an agency to consider a reasonably full range of alternatives to its proposed action, *see Muckleshoot Indian Tribe v. USFS,* 177 F.3d 800, 813 (9th Cir.1999), even when an environmental impact statement ("EIS") is not required. *Bob Marshall Alliance v. Hodel,* 852 F.2d 1223, 1229 (9th Cir.1988) ("[A]ny proposed federal action involving unresolved conflicts as to the proper use of resources triggers NEPA's consideration of alternatives requirement, whether or not an EIS is also required."). An agency's failure to analyze a viable alternative that is consistent with the objectives of its proposed action can render an EA inadequate. *See Muckleshoot Indian Tribe,* 177 F.3d at 814. For two reasons, we hold USFS failed to adequately consider alternative courses of action in this case.

 First, the EA did not analyze an adequate range of alternatives. Though there is no "numerical floor on alternatives to be considered," *Native Ecosystems,* 428 F.3d at 1246, the EA's analysis of only a no action alternative and USFS's preferred alternative (the proposed project) was insufficient. In this case, USFS proposed no alternatives of its own. *Cf. City of Davis v. Coleman,* 521 F.2d 661, 671 (9th Cir.1975) ("Compliance with NEPA is a primary duty of every federal agency; fulfillment of this vital responsibility should not depend on the vigilance and limited resources of environmental plaintiffs."). The EA did not analyze any action alternative other than the proposed project. *Cf. Muckleshoot Indian Tribe,* 177 F.3d at 813 (holding that USFS failed to consider an adequate range of alternatives when an EIS considered only a no

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

action alternative along with two "virtually identical" action alternatives). During the public comment period, which took place before USFS prepared its EA, EPIC proposed an action alternative that would not remove trees greater than twelve inches in diameter, would not involve a commercial timber sale, and would not result in any road construction or reconstruction. USFS rejected EPIC's proposal at this preliminary stage of the decision-making process, stating only that EPIC's proposal was "not consistent with Purpose & Need." NEPA requires USFS to "study, develop, and describe appropriate alternatives to recommended courses of action." 42 U.S.C. § 4332(2)(E). A cursory dismissal of a proposed alternative, unsupported by agency analysis, does not help an agency satisfy its NEPA duty to consider a reasonable range of alternatives. *Cf. EPIC v. USFS,* 451 F.3d 1005, 1016 (9th Cir.2006) (holding that USFS analyzed a reasonable range of alternatives when the EA considered three distinct alternatives (two action alternatives and a no action alternative) in detail and considered but rejected, for reasons articulated in the record, six other alternatives).

We have held that, in some cases, an agency's consideration of a no-action alternative and the agency's preferred alternative can satisfy NEPA. *See Native Ecosystems,* 428 F.3d at 1249. However, in every case, the agency's duty under NEPA remains to consider "all reasonable alternatives." *Id.* at 1246. In this case, USFS did not propose any action alternatives of its own and did not perform an analysis of the alternative proposed by EPIC or of any other alternative. Though "an agency's obligation to consider alternatives under an EA is a lesser one than under an EIS," *id.,* we hold that the EA's analysis of a no action alternative and USFS's preferred action alternative did not amount to the "full and meaningful consideration" of

alternatives that NEPA requires, *id.* at 1245 (quoting *Bob Marshall Alliance,* 852 F.2d at 1229) (internal quotations omitted).

■ Second, USFS did not adequately consider alternative courses of action in this case because USFS defined the objectives of the project so narrowly that the proposed project was the only alternative that would serve those objectives. Although USFS has discretion to define the goals of its projects and need only consider alternatives that advance those goals, *see id.* at 1247, USFS may not define the goals of its projects so narrowly that only its preferred alternative will meet those goals, *see City of Carmel-by-the-Sea v. U.S. Dep't of Transp.,* 123 F.3d 1142, 1155 (9th Cir.1997) ("The stated goal of a project necessarily dictates the range of 'reasonable' alternatives and an agency cannot define its objectives in unreasonably narrow terms."). The project included goals to reduce fire risk and to facilitate long-term development of old growth by eliminating unnecessary underbrush and small trees. However, an additional purpose of the thinning project in this case was to pay for the thinning by selling the trees cut, rather than spending money collected through taxes. The only alternative that could satisfy this additional objective was a commercial logging project—USFS's preferred alternative.

A tree-thinning project that covers its costs through sales of timber could be consistent with USFS's mission as set forth in the National Forest Management Act ("NFMA") and the Northwest Forest Plan. However, NFMA specifically mandates that USFS's forest management projects "include *coordination* of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." 16 U.S.C. § 1604(e)(1) (emphasis added). Likewise, the Northwest Forest Plan strives to provide "a steady supply of timber sales ...

without degrading the health of the forest or other environmental resources." Defining a project objective as "to cover the costs of the forest-thinning by selling timber" eliminates any project that does not provide for a commercial sale. Narrowing the range of possible agency action to commercial logging projects elevates "timber" above the other factors with which NFMA mandates timber considerations be "coordinated." This approach also precludes the agency from considering alternatives that might serve the goals of the Northwest Forest Plan better than the agency's preferred alternative by striking a closer balance between timber and environmental interests. We hold that USFS erred under NEPA by defining the goals of its project so narrowly that only its preferred alternative would serve those goals.

## II

In addition, EPIC argues that the forest-thinning project violates NFMA. NFMA requires USFS to "provide for diversity of plant and animal communities." 16 U.S.C. § 1604(g)(3)(B). In ensuring that diverse animal communities are maintained after the implementation of a project, the Northwest Forest Plan requires USFS to monitor the effect of a project on the habitat of affected species and to use that analysis as a proxy for the project's effects on the population of affected species in a so-called "proxy on proxy" approach. When USFS uses the proxy on proxy approach, its methodology must be reliable, see *Lands Council v. Powell*, 395 F.3d 1019, 1036 (9th Cir.2005), meaning that the methodology must "reasonably ensure[ ] that the proxy results mirror reality," *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1066 (internal quotation omitted), *amended by* 387 F.3d 968 (9th Cir.2004).

[3] In this case, USFS neither analyzed the acreage needed by the Pacific fisher nor analyzed how much suitable fisher habitat would remain in the planning area after the project was completed. The EA's reliance on anecdotal evidence about the distribution of the fisher in the planning area does not reasonably ensure that a diverse population of wildlife will be maintained after the project is completed. Likewise, the biological assessment, relied upon in the EA, does not provide any analysis of the project's effects on the fisher's habitat. We hold that, because USFS did not conduct a valid proxy on proxy analysis in this case, it erred under NFMA by not ensuring that a diverse population of wildlife, including the Pacific fisher, will be maintained in the planning area after the implementation of the forest-thinning project.

## III

In summary, we hold that USFS violated NEPA by failing to consider a reasonably full range of alternatives to its proposed forest-thinning project. We also hold that USFS violated NFMA by failing to sufficiently analyze by proxy whether a diverse population of wildlife, one that includes the Pacific fisher, will remain in the planning area after USFS implements its forest-thinning project. We reverse the order of the district court granting summary judgment in favor of USFS and remand this case with instructions to enter summary judgment in favor of EPIC. Moreover, on remand, the district court is instructed to enjoin the project until USFS has completed a new environmental assessment consistent with this disposition.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

CALLAHAN, J., concurring in part and dissenting in part:

I dissent from Part I of the memorandum disposition because the environmental assessment (EA) complies with the National Environmental Policy Act's (NEPA)

mandate to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E).

In *Native Ecosystems Council v. United States Forest Service,* 428 F.3d 1233, 1246 (9th Cir.2005), we rejected the argument that an EA's detailed consideration of two alternatives—a "no-action" plan and a preferred course of action—violated NEPA. We wrote: "[s]o long as 'all reasonable alternatives' have been considered and an appropriate explanation is provided as to why an alternative was eliminated, the regulatory requirement is satisfied." *Id.* Here the Forest Service considered but rejected an additional proposed alternative that did not involve a timber sale or the removal of any tree larger than 12 inches in diameter at breast height. The Forest Service rejected this proposal because it did not allow for the removal of fuel ladders that posed a fire risk to the larger trees and because it prevented a commercial sale. The rejection was reasonable and appropriate because the proposal did not advance the purposes of the project. *Id.* at 1247. Under *Native Ecosystems,* the detailed consideration of the action and no-action alternatives for the tree-thinning project complies with NEPA.

The Forest Service also did not define the tree-thinning project too narrowly. In *City of Carmel–by–the–Sea v. United States Department of Transportation,* 123 F.3d 1142, 1155–59 (9th Cir.1997), we were confronted with the stated purpose and need of a project—realigning Highway 1 in Monterey County—that, like here, preordained one of the proposed alternatives. We explained that "[t]he stated goal of a project necessarily dictates the range of 'reasonable' alternatives and an agency cannot define its objectives in unreasonably narrow terms." *Id.* at 1155.

The majority relies on *City of Carmel* to hold that the added purpose of the tree-thinning project—to pay for the thinning by selling the cut trees—was contrary to NEPA because the only alternative that would satisfy this purpose was the Forest Service's preferred alternative. However, *City of Carmel* did not reject the highway realignment project out-of-hand because the stated purpose and need of the project preordained one of the alternatives. Instead, *City of Carmel* examined the reasonableness of the project's stated goals and, in light of these goals, the reasonableness of the alternatives. *Id. City of Carmel* ultimately rejected the argument that the agency there failed to consider alternatives to the highway realignment project because the goals of the project preordained a particular alternative, after concluding that the project goals were reasonable. *Id.* at 1155–59.

The National Forest Management Act (NFMA) provides for an interdisciplinary approach to land management, factoring in economic considerations and timber sales. 16 U.S.C. § 1604(a), (e)-(f). The Shasta–Trinity Forest Plan also provides for timber production. Because the commercial sale component of the tree-thinning project comports with NFMA and the Forest Plan, it is a reasonable project goal. Therefore, under *City of Carmel,* the commercial sale component of the tree-thinning project does not undermine the validity of the EA.

Because appellant's other NEPA challenges to the EA also lack merit, I would affirm the district court's summary judgment on appellant's NEPA claims.

I concur in Part II of the memorandum disposition and the remedy provided in Part III for the NFMA violation.